### ALBERT LEEPER v. THE STATE.

*No. 3512.    Decided October 25.*

1. **Accomplice to Attempt to Bribe.**—Indictment described the bribe offered by the principal as "two hundred and fifty dollars in money." Exception was taken to the indictment upon the ground that it does not allege the kind or value of the money offered as a bribe. Such allegations not being essential to the indictment, the exception was properly overruled.

2. **Same.—Charge of the Court.**—Direct evidence of the offense having been adduced on the trial, the court did not err in refusing to instruct the jury upon the law of circumstantial evidence.

3. **Same.—Practice.**—The rule is that incorrect or insufficient instructions, unless exception be promptly reserved, will constitute reversible error only when they are calculated, upon the whole case, to injure the rights of the accused. In his amended motion for new trial the defendant for the first time complains that the court erred in failing to charge, 1, that before the jury could convict the defendant the evidence must establish the guilt, beyond a reasonable doubt, of the principal; and, 2, that the uncorroborated testimony of an accomplice would not be sufficient to convict the principal. In view of the whole charge upon the presumption of innocence and the reasonable doubt, although it does not apply the doctrines directly to the guilt of the principal, as it should, the first objection is not tenable. But the second, in view of the evidence, constitutes reversible error — the trial court, though correctly expounding the rules of law applicable to accomplice testimony, failing to apply them directly to the issue of the guilt of the principal.

APPEAL from the District Court of Coryell. Tried below before Hon. C. K. Bell.

The appellant was convicted upon the second count of the indictment which charged Layton McDonald with the offense of offering to bribe a witness in a criminal cause to disobey an attachment, and himself, appellant, as being accomplice to McDonald in the commission of said offense. A term of two years in the penitentiary was the penalty assessed by the verdict.

J. W. Mouchette was the first witness for the State. He testified, in substance, that he was the person named in the indictment as the one to whom the bribe was offered. He was also the injured party named in the indictment pending in Hamilton County charging Dolly Carter with assault with intent to murder. The witness, the defendant, Layton McDonald, and Frank Gouldy all lived at Turnersville, in Coryell County. The witness was in the employ of Gouldy during the month of June, 1890. He took dinner at Gouldy's house on the 25th day of that month. The defendant was a guest of Gouldy's at dinner on that day. At the dinner table the defendant said to witness, "Say, pardner, how much did you get out of your Carter cases?" The witness replied that H. J. Carter, the father of Dolly Carter, had compromised witness's civil suit against him for damages by paying the witness $750. Defendant asked witness why he did not make more than that out of the Carters. Witness asked him how he could do it. He replied, "I believe the Carters will give $250 if you will get out of the country and not appear against them." Witness turned to Gouldy and said, "You would not do that, would you, Mr. Gouldy?" Gouldy replied, "I think it is the best thing you can do." Nothing more was said at this time, and witness "thought nothing particular" about the matter.

A few days later the defendant came to the witness in Gouldy's field, stopped him at his work, and said that he wanted to talk to witness. He then told witness that he, witness, could make $250 if he would leave the country and not appear as a witness in the Carter cases—by which witness meant the cases pending against Dolly and George Carter for an assault with intent to murder him, witness. He advised witness to accept the $250, as it was more than witness would make by transient work in two years. Witness did not agree to accept the $250, but led defendant to believe that he would. As he left the defendant told witness that he knew a man who was "at work on it;" that he would send that man to witness, and advised witness to do as that man wished. Witness asked who that man was, and defendant said his name was Layton McDonald. He then left, going towards Turnersville.

About an hour later a man came to the witness in Gouldy's field, from the direction of Turnersville, stopping en route to talk to Gouldy at another point in the field. He opened a conversation with witness by proposing to hire witness to go to his ranche "out west," paying witness $150 in cash in advance. Witness declined to hire. The man then pro-

posed to pay witness $250 to leave the country and not appear as a witness in the Carter cases. He advised and urged the witness to accept the offer. He did not tender the money, but proposed to go at once, get it, bring it back, and give it to witness. Witness did not tell that man that he would not accept the proposition, but rather led him to believe that he would. Witness had his own reasons for doing so. Witness asked the man his name. He replied, "Never mind about my name," and then added, "My name is Key." That man in fact was Layton McDonald. He did not return to witness, nor did he ever pay witness any money.

This witness testified that subsequent to this conversation with McDonald he went to the said McDonald's house to sell him a note for $20 executed by Gouldy, and for no other purpose. He denied that he ever, at any time or place, asked Charley Schriber where Layton McDonald lived, or requested Schriber to tell McDonald to come to see him, witness. He denied that he ever told J. O. Morris that he could make $250 more out of the Carter cases, and that he had Layton McDonald working up the matter for him. He denied that during the present term of the court he told the said Morris that he would not have indicted the defendant and McDonald in this case had he not been compelled to do so in order to save himself. In these denials the witness was directly contradicted by the defendant's witnesses Charley Schriber and J. O. Morris.

Mac Davis testified for the State that he took dinner at Gouldy's house on the day in June, 1890, first mentioned by the witness Mouchette. On that occasion he heard the defendant ask Mouchette how much he had made out of the Carter cases. He also, on the same occasion, heard the defendant tell Mouchette that he could get $250 more from the Carters by leaving the country, and advised him, Mouchette, to accept the money and leave.

J. A. Eidson, the leading counsel for the Carters in all of the litigation, civil and criminal, growing out of the assault upon Mouchette, testified for the State, in substance, that the defendant came to him, in his office in Hamilton, on the 26th day of June, 1890, and suggested to him that Mouchette could be induced to leave the country and not appear as a witness against the Carter boys at their pending trials, provided the Carters would cash some loans he had out in Hamilton County and pay him an additional sum. The witness indignantly refused to become a party to such an arrangement or to entertain the suggestion, and ordered the defendant from his office. According to the testimony of J. C. George, the associate counsel for the Carters, the defendant, on the same day he made the suggestion to Eidson, made the same suggestion to him. He likewise declined to entertain the suggestion or to become a party to the scheme, and advised the defendant that his proposed proceeding would constitute a felony. Messrs. Eidson and George both advised Mr. Goodson, Mouchette's attorney, of the suggestion of the defendant.

Dolly Carter, the defendant in the prosecution for assault to murder Mouchette, testified for the State that the defendant reached his father's house about sundown on the evening referred to by Eidson and George, and remained over night. Soon after his arrival he asked witness what he would give to get Mouchette out of the way at the time of the trial then pending. Witness replied that he "would not give a damned cent;. that he did not want him out of the way, but wanted him to be present and testify." Defendant then said that he had a fellow working on Mouchette,. and that it was his understanding that Mouchette would leave the country if the Carters would cash the notes he held for loans placed in Hamilton County and pay him an additional amount. Defendant did not mention the matter to witness's father, but the witness did, when his father said to him: "Have nothing to do with him. He is a damned villain, and this. is a trap set by Goodson to catch us. Sleep on your pistol to-night." The State closed.

Frank Gouldy for the defense, referring to the conversation at his dinner table first mentioned by Mouchette, testified that Mouchette said in that conversation that he had obtained $750 from the Carters, and could get more. Defendant remarked in reply that he considered that enough,. and that he would not, if he were Mouchette, rob the Carters any more. Mouchette then said to witness, "If you was in my place wouldn't you take it?" Witness replied, "I don't think I would." A few days afterwards Layton McDonald came to witness in his field and asked him how long Mouchette was yet to work for him. Witness replied that he would quit when his month was up. McDonald then said that he wanted to hire Mouchette to work for him on leaving witness, and rode down the field to Mouchette and talked to him a few minutes.

On cross-examination this witness said that he advised Mouchette not to take the $250 spoken of by him and defendant, but at that time he did not know what the $250 was offered to Mouchette for, if offered at all.

It was admitted by the State that H. J. Carter, if present, would testify that he had never known McDonald, and that he did not know the defendant at the date of the alleged attempted bribery, and that he had never spoken to either of them about Mouchette.

*Vardiman, White & Taylor* and *McDowell, Miller & Hawkins,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—There are two counts in the indictment, but the defendant was tried upon the second count only, and upon that count convicted. In said count it is charged that one Layton McDonald offered to bribe one Mouchette, a witness who had been attached to testify in a.

certain criminal cause, to disobey said attachment, etc., and that the defendant, prior to the commission of said offense by said McDonald, advised, commanded, and encouraged said McDonald to commit said offense. It is alleged that the bribe offered by McDonald was "$250 in money."

Exceptions were presented to the indictment, and were in our opinion properly overruled. It was not necessary to allege the kind or value of the money offered as a bribe. 2 Bish. Crim. Proc., secs. 75, 126, 127, and note 6 to sec. 127. In all respects we think the indictment is a good one.

It is claimed as error that the court refused to give an instruction requested by counsel for defendant explaining the rules as to the consideration and sufficiency of circumstantial evidence. We do not think the court erred in refusing to give such charge. The case is not one of circumstantial evidence only. The testimony of the witness Mouchette is direct as to the guilt of both McDonald and the defendant.

In his amended motion for a new trial the defendant complains that the court erred in failing to charge the jury "that before they could convict the defendant the evidence must be sufficient to establish the guilt beyond a reasonable doubt of the principal McDonald," and in failing to charge that the uncorroborated testimony of an accomplice would not be sufficient to convict the principal, McDonald, etc. These alleged deficiencies in the charge were not excepted to at the trial, nor did the defendant request any instructions calling attention thereto. This being the state of the case before this court, we are to determine, first, whether the charge of the court is defective as claimed; and second, if defective, is it materially so—that is, was its insufficiency calculated to injure the rights of the defendant? Willson's Crim. Stats., sec. 2363.

Upon an examination of the charge given to the jury we find that the jury were instructed in effect that in order to find the defendant guilty they must believe that the principal, McDonald, was guilty as charged in the indictment, and that the defendant, prior to the commission of the offense by McDonald, advised, commanded, or encouraged said McDonald to commit said offense. In concluding the charge the usual instruction as to presumption of innocence and reasonable doubt is given. It would have been more favorable to the defendant, and not objectionable, if the charge had instructed the jury directly that before they could find the defendant guilty they must believe from the evidence beyond a reasonable doubt that McDonald committed the offense as charged in the indictment. Such is the law of the case. Poston v. The State, 12 Texas Ct. App., 408; Cohea v. The State, 11 Texas Ct. App., 622.

With respect to accomplice testimony the charge states the rules of law correctly, but does not directly apply the instruction to the issue of the guilt of the principal, McDonald. It was no doubt intended by the learned judge that the instructions as to accomplice testimony should be

considered and applied by the jury in determining the issue of McDonald's guilt as well as in determining the issue of defendant's guilt. This intention, however, is not clearly expressed in the charge, and the jury might have concluded that the instructions applied only to the issue of the defendant's guilt, independently of the guilt of McDonald. In this respect we think the charge is defective, and under the peculiar facts of this case we think the defect was calculated to injure the rights of the defendant.

Such being our view, we reverse the judgment and remand the cause for a new trial.

*Reversed and remanded.*

Judges all present and concurring.